IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION


JESSE JAMES HILL, JR.,
    Plaintiff,

vs.                                                Case No. 5:03cv192/MCR/EMT

M.S. WILLIAMS,
    Defendant.
_____/

## REPORT AND RECOMMENDATION

      This case filed pursuant to 42 U.S.C. § 1983 is now before the court upon Defendant's special report and supporting documents (Doc. 33).  The pro se Plaintiff, a state prisoner who is proceeding in forma pauperis in this action, responded to the special report (Doc. 42).  On October 4, 2004, this Court entered an order advising the parties of the importance and ramifications of Rule 56 summary judgment consideration, and informing the parties that the special report would be construed as a motion for summary judgment as of November 15, 2004 (Doc. 43).  Plaintiff filed additional argument and Rule 56 materials on November 12, 2004 (Doc. 45).  Upon review of the submissions of the parties, it is the opinion of the undersigned that Defendant's motion for summary judgment should be granted in part.

I.    BACKGROUND

      The following facts are without substantial controversy.  Plaintiff was housed in administrative confinement at the Jackson Correctional Institution (JCI) on June 6, 2001.  Defendant Williams was employed as a security officer at JCI at that time and worked the third shift beginning at 3:00 p.m.  When Defendant served Plaintiff the dinner meal, Plaintiff observed that the entree was pork sausage.  Plaintiff informed Defendant that his Islamic faith prohibited him from eating any of the food on the tray because it was contaminated with pork.  Plaintiff requested that Defendant

provide him an alternate meal.[1] Defendant removed the food tray from Plaintiff's cell and returned shortly thereafter with a food tray. Defendant told Plaintiff it was an alternate food tray. Plaintiff began eating the food, and approximately five minutes later experienced difficulty breathing, a headache and a swollen tongue, his heart began pounding and he began seeing white spots. Upon thorough inspection of his food tray, he noticed "minute" pieces of pork sausage. Plaintiff declared a medical emergency and was taken to the medical department. Upon examination by a nurse, he was diagnosed as experiencing hyperventilation, which subsided after thirty minutes. Plaintiff was returned to his cell with instructions that he be permitted to eat extra sandwiches.

The parties' versions of the facts significantly diverge as to whether Defendant gave Plaintiff an alternate tray or simply scraped the pork sausage off the original tray and gave the same tray back with assurances to Plaintiff that it was an alternate tray. Plaintiff states that upon his complaint to Defendant, Defendant twice told him to take the pork off the tray and eat the remaining food (Doc. 19 at 7A). Additionally, Plaintiff states he questioned Defendant as to whether the second tray was an alternate because it did not have an extra portion of beans, which is usually provided on alternate trays (*id.* at 7A-7B). Defendant denies that he scraped the pork off the tray and gave the same tray back to Plaintiff (Doc. 33, Ex. A, Affidavit of M.S. Williams, ¶ 4). He states he took the first tray from Plaintiff, saw an alternate meal tray on the food cart, and gave it to Plaintiff (*id.*, ¶ ¶ 4, 6). Defendant states the second tray appeared to have beans on it, not any pork, but if there were tiny pieces of pork on the alternate tray, he does not know how it got there (*id.*, ¶ 6).

II.     PROCEDURAL HISTORY

Plaintiff filed his second amended complaint against Defendant Williams alleging violation of his right to freely exercise his religion guaranteed by the First Amendment of the United States Constitution; the Florida Constitution; and the Religious Freedom Restoration Act of 2000, Florida

---

[1] The parties do not dispute that at the time of the alleged constitutional violation, the DOC had policies in place to accommodate prisoners whose religions prohibited the consumption of pork, such as the existence of the alternate entree program to provide meal options for inmates whose religions had dietary restrictions against pork and the policy of allowing inmates to preview the menu and choose an alternate meal.

Case No.: 5:03cv192/MCR/EMT

Statutes section 761.01 et seq. (Doc. 19 at 8).[2] As relief, Plaintiff seeks compensatory and punitive damages for the constitutional violation (*id.*). Plaintiff also included a general prayer for relief, which he later clarified as including a claim for nominal damages (*id*. at 8A; Doc. 42 at 5).

Defendant, in his motion for summary judgment, argues that he is entitled to summary judgment because Plaintiff's amended complaint fails to establish a constitutional violation. Specifically, Defendant argues, ". . . a single instance of being fed pork is not a violation of a Muslim inmate's First Amendment right to freedom of religious expression." (Doc. 33 at 11-12). Additionally, Defendant contends he is entitled to qualified immunity, arguing that Plaintiff cannot meet the burden of demonstrating that Defendant knew there was pork in the food Plaintiff consumed, and there is no clearly established law requiring Defendant to ensure Muslim inmates do not accidentally ingest pork (Doc. 33 at 7). Additionally, Defendant contends Plaintiff's claims for compensatory and punitive damages are subject to dismissal pursuant to 42 U.S.C. § 1997e(e) because Plaintiff failed to allege or show more than de minimis physical injury (*id*. at 8).

III. DISCUSSION

    A.    <u>Summary Judgment Standard</u>

To prevail on his motion for summary judgment, Defendant must show that Plaintiff has no evidence to support his case or present affirmative evidence that Plaintiff will be unable to prove his case at trial. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322-23, 106 S. Ct. 2548, 2553-54, 91 L. Ed. 2d 265 (1986). If Defendant successfully negates an essential element of Plaintiff's case, the burden shifts to Plaintiff to come forward with evidentiary material demonstrating a genuine issue of fact for trial. *Id.* The "mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 247, 106 S. Ct.

---

[2] Plaintiff's initial and first amended complaints included a claim that Defendant disregarded Plaintiff's health by feeding him pork when Defendant knew that Plaintiff was allergic to it, in violation of the Eighth Amendment. However, Plaintiff abandoned his Eighth Amendment claim in his second amended complaint. Even if Plaintiff's second amended complaint was construed as including an Eighth Amendment claim, Plaintiff has failed to show the existence of a genuine issue of material fact as to whether he was allergic to pork. The Pre-special Housing Health Appraisal performed by medical staff of June 1, 2001 states lists Plaintiff's only allergy as penicillin (*see* Doc. 33, Ex. I). Furthermore, the medical examination performed after Plaintiff consumed the pork resulted in a diagnosis of hyperventilation, not an allergic reaction (*see* Doc. 33, Ex. J).

Case No.: 5:03cv192/MCR/EMT

2505, 91 L. Ed. 2d 202 (1986). A fact is "material" if it "might affect the outcome of the suit under the governing [substantive] law." *Id. Accord* Tipton v. Bergrohr GMBH-Siegen, 965 F.2d 994, 998 (11th Cir. 1992). Further, Plaintiff must show more than the existence of a "metaphysical doubt" regarding the material facts, Matsushita Electric Industrial Co., LTD. v. Zenith Radio Corporation, 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986), and a "scintilla" of evidence or conclusory allegations is insufficient. Celotex, 477 U.S. at 324 (quoting Fed.R.Civ.P. 56(e)). Plaintiff must either point to evidence in the record or present additional evidence sufficient to withstand a directed verdict motion at trial based on the alleged evidentiary deficiency. Celotex, 477 U.S. at 324; Owen v. Wille, 117 F.3d 1235, 1236 (11th Cir. 1997) ("Rule 56(e) . . . requires the nonmoving party to go beyond the pleading and by h[is] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'"), *cert. denied*, 522 U.S. 1126 (1998) (quoting Celotex, 477 U.S. at 324 (quoting Fed.R.Civ.P. 56(c), (e))); Hammer v. Slater, 20 F.3d 1137 (11th Cir. 1994).

Evidence presented by Plaintiff in opposition to the motion for summary judgment, and all reasonable factual inferences arising from it, must be viewed in the light most favorable to Plaintiff. Adickes v. S. H. Kress & Co., 398 U.S. 144, 157, 90 S. Ct. 1598, 1608, 26 L. Ed. 2d 142 (1970); Jones v. Cannon, 174 F.3d 1271, 1282 (11th Cir. 1999). A motion for summary judgment should be granted if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56; Celotex, 477 U.S. at 322.

      B.     <u>Eleventh Amendment Immunity</u>

Defendant claims he is entitled to Eleventh Amendment immunity insofar as he is sued in his official capacity. A suit against a state employee in his or her official capacity is deemed to be a suit against the state for Eleventh Amendment purposes. Will v. Michigan Dept. of State Police, 491 U.S. 58, 71, 109 S.Ct. 2304, 105 L.Ed.2d 45, 58 (1989). Generally, absent waiver or express congressional abrogation, the Eleventh Amendment prohibits a suit against a state in federal court. Kentucky v. Graham, 473 U.S. 159, 167 n. 14, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985); Gamble v. Florida Department of Heath and Rehabilitative Services, 779 F.2d 1509, 1511 (11th Cir. 1986).

Thus, Defendant is entitled to Eleventh Amendment immunity to the extent Plaintiff sues him in his official capacity.

    C.    Qualified Immunity

Defendant claims he is entitled to qualified immunity from suit in his individual capacity. The doctrine of qualified immunity is a guarantee of fair warning. McElligott v. Foley, 182 F.3d 1248, 1260 (11th Cir. 1999). It shields government officials from individual capacity suits against them for acts that do not violate a clearly established statutory or constitutional right of which a reasonable person would have known given the circumstances and information possessed by the official at the time of the conduct. Hope v. Pelzer, 536 U.S. 730, 122 S.Ct. 2508, 153 L.Ed.2d 666 (2002); Conn v. Gabbert, 526 U.S. 286, 119 S.Ct. 1292, 1295, 143 L.Ed.2d 399 (1999) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982)); Powell v. Ga. Dep't of Human Res., 114 F.3d 1074 (11th Cir. 1998). Qualified immunity seeks to ensure that individuals can reasonably anticipate when their conduct may give rise to liability, and hence, liability only attaches if the contours of the right allegedly violated are sufficiently clear that a reasonable person would understand that what he is doing violates that right. McElligott, 182 F.3d at 1260 (citing United States v. Lanier, 520 U.S. 259, 270, 117 S.Ct. 1219, 137 L.Ed.2d 432 (1997)).

In order to receive qualified immunity, the public official "must first prove that he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred." Lee v. Ferraro, 284 F.3d at 1194 (internal quotation marks omitted). "Once the defendant establishes that he was acting within his discretionary authority, the burden shifts to the plaintiff to show that qualified immunity is not appropriate." *Id.*, at 1194. The Supreme Court has established a two-part test for evaluating a claim of qualified immunity. First, the trial court must determine whether a constitutional right has been violated on the facts alleged. Saucier v. Katz, 533 U.S. 194, 121 S.Ct. 2151, 2156, 150 L.Ed.2d 272 (2001). The court must assess the facts in a light most favorable to the party asserting the injury. *Id*. Second, if a violation has been established, the court must determine whether the right was "clearly established" at the time of the event. *Id*. The very action in question need not have been held unlawful for an official to lose the protection of qualified immunity. Hope, 122 S.Ct. at 2515; Anderson v. Creighton, 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987). Officials can still be on notice that their conduct violates established law even

in novel factual circumstances, and there is no requirement that previous cases be "fundamentally" or even "materially" similar. Hope, 122 S.Ct. at 2516. Instead, the law merely must give Defendants "fair warning" that their actions are unconstitutional. *Id*. In light of pre-existing law, the unlawfulness must be apparent. *Id*.; Creighton, 483 U.S. at 640.

"In this circuit, the law can be 'clearly established' for qualified immunity purposes only by decisions of the U.S. Supreme Court, Eleventh Circuit Court of Appeals, or the highest court of the state where the case arose." Wilson v. Strong, 156 F.3d 1131, 1135 (11th Cir. 1998) (quoting Jenkins v. Talladega City Bd. of Education, 115 F.3d 821, 826 n. 4. (11th Cir. 1997)).

    D.    <u>Conclusions of Law Regarding Material Facts</u>

        1.    Claims for Compensatory and Punitive Damages

Plaintiff seeks $100,000.00 in compensatory damages and $250,000.00 in punitive damages for the alleged violation of his First Amendment rights. Provisions of the Prison Litigation Reform Act of 1995 (Pub.L.No. 104-134, 110 Stat. 1321 (1996)) ("PLRA") have significantly limited the damages available to prisoners. Subsection (e) of 42 U.S.C. § 1997e states that "[n]o Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury." The Eleventh Circuit has decided that the phrase "Federal civil actions" means all federal claims, including constitutional claims. Napier v. Preslicka, 314 F.3d 528, 532 (11th Cir. 2000) (citing Harris v. Garner, 216 F.3d 970, 984-85 (11th Cir. 2000) (en banc)). In order to satisfy section 1997e(e), a prisoner must allege more than a de minimis physical injury. Harris v. Garner, 190 F.3d 1279, 1286-87 (11th Cir. 1999), *reh'g en banc granted and opinion vacated*, 197 F.3d 1059 (11th Cir. 1999), *opinion reinstated in pertinent part en banc*, 216 F.3d 970 (11th Cir. 2000)) ("We therefore join the Fifth Circuit in fusing the physical injury analysis under section 1997e(e) with the framework set out by the Supreme Court in Hudson [v. McMillian, 503 U.S. 1, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992)] for analyzing claims brought under the Eighth Amendment for cruel and unusual punishment, and hold that in order to satisfy section 1997e(e) the physical injury must be more than de minimis, but need not be significant."); Osterback v. Ingram, 2000 WL 297840, 13 Fla. L. Weekly D 133 (N.D. Fla. 2000), *aff'd*. 263 F.3d 169 (11th Cir. 2001) (Table), *cert. denied*, 122 S.Ct. 2362, 153 L.Ed.2d 183 (2002) (holding that a prisoner plaintiff may not recover compensatory

or punitive damages for mental or emotional injury without establishing that he suffered more than de minimis physical injury).

In the instant case, Plaintiff alleges that as a result of his ingesting "minute" pieces of pork, he could not breathe, his tongue became swollen, he experienced shortness of breath, his heart began pounding, his head hurt, and he began seeing white spots (Doc. 19 at 7B). The medical records show Plaintiff was diagnosed as suffering a thirty-minute episode of hyperventilation (Doc. 33, Ex. J). People in regular and ordinary activities and events in their daily lives may hyperventilate, and they treat the episode with a home remedy, such as engaging in breathing exercises and relaxation techniques. This injury simply does not fall within the parameters of section 1997e(e). *See* Harris 190 F.3d at 1287 ("A 'dry shave,' without more, is simply not the kind of 'injury' that is cognizable under section 1997e(e)."); Siglar v. Hightower, 112 F.3d 191, 194 (5th Cir.1997) (a sore, bruised ear lasting for three days was not a sufficient physical injury under § 1997e(e) to support recovery for emotional or mental suffering); Sarro v. Essex County Correctional Facility, 84 F.Supp.2d 175, 177 (D.Mass.2000) (difficult breathing which required the use of an inhaler did not satisfy the physical injury requirement); Cain v. Commonwealth of Va., 982 F.Supp. 1132, 1135 & n. 3 (E.D. Va.1997) (unbearable headaches, vision loss, numbness in arms and legs, joint pain, stomach cramps, lower back pain, and blackouts were not a sufficient physical injury to recover under § 1997e(e) for mental injury); Canon v. Burkybile, No. 99 C-4623, 2000 WL 1409852 (N.D. Ill. July 25, 2000) (headaches, insomnia, stress, and stomach anxiety did not meet the physical injury requirement of § 1997e(e)). Because the PLRA forbids the litigation of Plaintiff's claims for compensatory and punitive damages while Plaintiff is imprisoned, there is no valid legal basis for these claims. Accordingly, the claims for compensatory and punitive damages should be dismissed without prejudice. Napier, 314 F.3d at 531-32; Harris, 190 F.3d at 1290.

      2.      Claim for Nominal Damages

Plaintiff's second amended complaint includes a general prayer for relief, and his initial response to Defendant's special report clarifies that this request includes a request for nominal damages (Doc. 19 at 8A; Doc. 42 at 5). Defendant maintains he is entitled to summary judgment on qualified immunity grounds. He argues Plaintiff cannot establish Defendant knowingly fed him pork. Furthermore, Plaintiff's right to not be accidentally fed pork was not clearly established at the

time of the alleged incident. Additionally he argues as a matter of law a single instance of being fed pork is not a First Amendment violation.

The first issue to be addressed is whether Defendant was engaged in a "discretionary function" when he performed the acts of which Plaintiff complains. *See* Holloman ex rel. Holloman v. Harland, 370 F.3d 1252, 1263-64 (11th Cir. 2004). This inquiry is two-fold: (1) was the government employee "performing a legitimate job-related function (that is, pursuing a job-related goal)" and (2) "through means that were within his power to utilize." *Id.* at 1255-56 (citation omitted).

> To pass the first step of the discretionary function test for qualified immunity, the defendant must have been performing a function that, but for the alleged constitutional infirmity, would have fallen with his legitimate job description. . . . After determining that an official is engaged in a legitimate job-related function, it is then necessary to turn to the second prong of the test and determine whether he is executing that job-related function--that is, pursuing his job-related goals--in an authorized manner. . . . Each government employee is given only a certain "arsenal" of powers with which to accomplish her goals. For example, it is not within a teacher's official powers to sign her students up for the Army to promote patriotism or civic virtue, or to compel them to bring their property to school to redistribute their wealth to the poor so that they can have firsthand experience with altruism.

*Id.* at 1266 (citation omitted).

Under this standard, Defendant--as a matter of law--was undoubtedly engaged in a discretionary function when he distributed the food trays. Though Defendant is not empowered to violate constitutional rights as part of his official duties, he did have the responsibility of distributing food trays to the inmates. The fact that he may have distributed Plaintiff's tray in an unconstitutional manner does not change the fact that he was fulfilling a legitimate job-related function. Moreover, the way in which he attempted to pursue this job-related goal (giving Plaintiff another food tray when Plaintiff complained about the contents of the first tray)--examined on a general level rather than in this specific application--was a legitimate prerogative of his job. From an alternate perspective, putting aside Plaintiff's First Amendment claim, Defendant's actions would undoubtedly be considered part of his duties and a legitimate exercise of his authority. Consequently, under the two-prong test articulated above, Defendant's activities in relation to the food tray incident were discretionary acts for which he may seek qualified immunity.

Case No.: 5:03cv192/MCR/EMT

The next step in the qualified immunity inquiry is to determine whether Plaintiff's allegations, if true, establish a constitutional violation. Hope, 536 U.S. at 736. In making this determination, the court must take the "facts" in the light most favorable to Plaintiff and determine the legal issue of whether Plaintiff's "facts," if proven, show that Defendant violated clearly established law. Priester, 208 F.3d at 925 n. 3 (citing Kelly v. Curtis, 21 F.3d 1544, 1546 (11th Cir. 1994)). Defendant contends Plaintiff cannot establish a constitutional violation because there is no evidence that Defendant knew the second tray was not an alternate food tray. Plaintiff states that twice before Defendant removed the first tray, Defendant suggested to him that he simply remove the pork and eat the remaining food (Doc. 19 at 7A). Plaintiff additionally states that after he realized there was pork on the second tray and alerted Defendant, Defendant came to his cell with a smile on his face (*id*. at 7B). Plaintiff states the second tray contained pieces of pork, and it did not contain navy beans, which was the entree served on the alternate food trays (*see* Doc. 19 at 7A; Doc. 45, Plaintiff's Declaration, ¶ 11). Lastly, Plaintiff states the nurse who treated him told him that "the officer" stated Plaintiff had been served beef sausage, not pork (Doc. 45, Plaintiff's Declaration, ¶ 9), and the medical records submitted by Defendant include a notation, "Officer D. Glass said that inmate was served beef sausage not pork" (Doc. 33, Ex. J). From this evidence a jury could infer Defendant knew the second tray was not an alternate tray and/or that it contained pork or traces of pork, the consumption of which violated Plaintiff's religious beliefs.

Defendant next contends a single instance of feeding Plaintiff pork is not a violation of a Muslim inmate's First Amendment right, however, Defendant provides no legal authority in support of this position. While prisoners retain First Amendment rights, including the First Amendment right of free exercise of religion, policies or conduct "alleged to infringe constitutional rights [in prison] are judged under a 'reasonableness' test less restrictive than that ordinarily applied to alleged infringements of fundamental constitutional rights." *See* O'Lone v. Estate of Shabazz, 482 U.S. 340, 349, 107 S.Ct. 2400, 2404, 96 L.Ed.2d 282 (1987). O'Lone directs courts to give respect and deference to the judgment of prison officials even in First Amendment challenges raised within the confines of prison. *Id.* The standard of review requires that challenged regulations or conduct be upheld if they are "reasonably related to legitimate penological interests." O'Lone, 482 U.S. at 350 (utilizing the standard of Turner v. Safley, 482 U.S. 78, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987)).

Thus, to find a free exercise violation in the prison context, a plaintiff must demonstrate that prison officials employed a policy or engaged in conduct not reasonably related to any legitimate penological interest or security measure, which substantially burdens a practice of his religion or prevents him from engaging in conduct or having a religious experience which the faith mandates. This interference must be more than an inconvenience; the burden must be substantial and significantly interfere with Plaintiff's practice of his religious beliefs. *Cf.* Thornburgh v. Abbott, 490 U.S. 401, 418, 109 S.Ct. 1874, 1884, 104 L.Ed.2d 459 (1989) (noting that O'Lone found prison regulations valid in part because the prisoners were permitted to participate in other Muslim religious ceremonies). Also relevant to the court's consideration is whether an "alternative means of exercising the right . . . remain open to prison inmates." O'Lone, 482 U.S. at 351. It must be recognized, however, that an "absence of ready alternatives" may be "evidence of the reasonableness of a prison regulation." Turner, 482 U.S. at 90, 107 S.Ct. at 2262. However, it does not mean that prison officials must "set up and then shoot down every conceivable alternative method of accommodating the claimant's constitutional complaint." Turner, 482 U.S. at 90-91, 107 S.Ct. at 2262. This is a "reasonableness" test, not a "least restrictive" alternatives test. *Id.* at 91, 107 S.Ct. at 2262.

Prior to considering the reasonableness of a regulation, as set forth in Turner, the court must first determine whether an infringement has occurred, specifically, whether the inmate has been substantially burdened in practicing his religion. Cheffer v. Reno, 55 F.3d 1517, 1522 (11th Cir. 1995). The Supreme Court held:

> "Where the state conditions receipt of an important benefit upon conduct proscribed by a religious faith, or where it denies such a benefit because of conduct mandated by religious belief, thereby putting substantial pressure on an adherent to modify his behavior and to violate his beliefs, a burden upon religion exists. While the compulsion may be indirect, the infringement upon free exercise is nonetheless substantial."

*See also* Lyng v. Northwest Indian Cemetery Protective Ass'n, 485 U.S. 439, 450, 108 S.Ct. 1319, 99 L.Ed.2d 534 (1988) ("[I]ndirect coercion or penalties on the free exercise of religion, not just outright prohibitions, are subject to scrutiny under the First Amendment.") (citations omitted); Hobbie v. Unemployment Appeals Comm'n of Fla., 480 U.S. 136, 141, 107 S.Ct. 1046, 94 L.Ed.2d

190 (1987) (quoting and reaffirming *Thomas v. Review Bd. of Ind. Employment Security Div.*, 450 U.S. 707, 101 S.Ct. 1425, 67 L.Ed.2d 624 (1981)). In the context of the Religious Freedom Restoration Act (RFRA), 42 U.S.C. § 2000bb-1, the Eleventh Circuit defined "substantial burden" as one that prohibits a religious adherent from engaging in conduct that his religion requires.[3] Cheffer, 55 F.3d at 1522. This burden must be more than inconsequential. *See* Employment Div., Dept. of Human Resources of Ore. v. Smith, 494 U.S. 872, 878-882, 110 S.Ct. 1595, 108 L.Ed.2d 876 (1990); Walsh v. La. High School Athletic Ass'n, 616 F.2d 152, 158 (5th Cir. 1980).[4] Indeed, in the context of the Religious Land Use and Institutionalized Persons Act (RLUIPA), 42 U.S.C. § 2000cc(a)(1), the Eleventh Circuit recently held:

> [A] "substantial burden" must place more than an inconvenience on religious exercise; a "substantial burden" is akin to significant pressure which directly coerces the religious adherent to conform his or her behavior accordingly. Thus, a substantial burden can result from pressure that tends to force adherents to forego religious precepts or from pressure that mandates religious conduct.

Midrash Sephardi Inc. v. Town of Surfside, 366 F.3d 1214, 1227 (11th Cir. 2004). Only if Plaintiff demonstrates a substantial burden on his religious practice, is it necessary to apply the reasonableness test of Turner to determine if Defendant's actions were reasonably related to a legitimate penological interest. Wilson v. Moore, 270 F.Supp.2d 1328, 1349 (N.D.Fla. 2003); *see also* Midrash, 366 F.3d at 1225 (Plaintiff bears burden of showing substantial burden on religious practice before invoking protections of RLUIPA). If Plaintiff fails to provide evidence that a particular practice is essential to his faith or that its absence would be a substantial burden to the

---

[3]The RFRA provides in pertinent part:

Government may substantially burden a person's exercise of religion only if it demonstrates that application of the burden to the person--1) is in furtherance of a compelling governmental interest and 2) is the least restrictive means of furthering that compelling government interest.

42 U.S.C. § 2000bb-1. Although RFRA was declared unconstitutional as applied to the States, *see* City of Boerne v. Flores, 521 U.S. 507, 117 S.Ct. 2157, 138 L.Ed.2d 624 (1997), the definition of "substantially burden" is helpful in analyzing First Amendment claims.

[4]In Bonner v. City of Prichard, 661 F.2d 1206 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all former Fifth Circuit decisions rendered before October 1, 1981.

exercise of his religion, then he has failed to show that its denial violated the First Amendment. Wilson, 270 F.Supp.2d at 1350.

In the instant case, the parties do not dispute that the Muslim holy book states Muslims are forbidden from consuming pork (*see* Doc. 19 at 7). Thus, Plaintiff has established that abstaining from consuming pork products is an important and sacred part of his religious practice. Although Defendant did not directly compel Plaintiff to consume the contaminated food, direct coercion is not required to show that the burden upon Plaintiff's free exercise was substantial. Defendant indirectly compelled Plaintiff to violate his religious beliefs by assuring him the meal was not contaminated with pork, although Defendant knew that it was (according to Plaintiff's version of the facts). Although the infringement was limited to one occasion, it prevented Plaintiff from actively practicing his faith. Furthermore, the magnitude of the infringement was not insignificant, as evidenced by the fact that the DOC had policies in place to accommodate prisoners whose religions prohibited the consumption of pork, such as the existence of the alternate entree program to provide meal options for inmates whose religions had dietary restrictions against pork and the policy of allowing inmates to preview the menu and choose an alternate meal, as well as the fact that staff was "refreshed" in the procedure for ordering and distributing food trays in the confinement unit as a result of Plaintiff's filing a grievance concerning the incident (*see* Doc. 42, attachment). Therefore, this Court concludes as a matter of law that Defendant's conduct compelled Plaintiff to engage in conduct that violated a significant aspect of his religious practice, thereby imposing a "substantial burden" on Plaintiff's free exercise of his religion. *See* Shakur v. Selksy, 391 F.3d 106, 112-13 (2d Cir. 2004) (plaintiff sufficiently stated substantial burden on religious practice where he alleged he missed a single religious feast); Jolly v. Coughlin, 76 F.3d 468, 477 (2d Cir. 1996) (requiring Rastafarian inmate to take medical test for detection of tuberculosis constituted substantial burden on free exercise of religion); Vanscoy v. Hicks, 691 F.Supp. 1336, 1337-38 (M.D. Ala. 1988) (single instance of an officer's denying an inmate the right to enter the chapel constituted a violation of the inmate's First Amendment rights and thereby entitled the inmate to nominal damages); *but see* Gill v. DeFrank, 8 Fed.Appx. 35, 36, 2001 WL 388057, at *1 (2d Cir. 2001) (holding that "missing one religious service does not constitute a substantial burden on an inmate's right to the free exercise of his religion.").

Additionally, taking the facts in the light most favorable to Plaintiff, Defendant has provided no rational reason for failing to provide Plaintiff an alternate meal. Defendant states Plaintiff did not order an alternate meal when he had the opportunity to do so; however, Plaintiff states he did (Doc. 33, Affidavit of M.S. Williams, ¶ 2; Doc. 45, Plaintiff's Declaration, ¶ 7). Regardless of whether Plaintiff ordered an alternate meal, Defendant has provided no rational reason for failing to obtain one at the time food was being served in administrative confinement. Indeed, Defendant denies that it would have been a threat to security and the orderly operation of the prison for him to obtain an alternate tray at the time food was served in administrative confinement (*see* Doc. 46, ¶ 17; Doc. 45, Plaintiff's Request for Admissions, ¶ 17). Therefore, the facts according to Plaintiff establish a violation of his First Amendment rights.

The next issue in the qualified immunity analysis is determining whether the law was clearly established so as to put Defendant on notice that his behavior was a violation. It is Plaintiff's burden to cite case law, in force at the time of Defendant's conduct, that would have made it absolutely clear that Defendant's conduct violated federal law. *See* Wilson, 526 U.S. at 609. As discussed *supra*, "[a] right is clearly established if, in light of already-existing law, the unlawfulness of the conduct is 'apparent.'" Akins v. Fulton County, Ga., ___ F.3d ___, 2005 WL 1958333 (11th Cir. Aug. 17, 2005) (citing Anderson v. Creighton, 483 U.S. 635, 640, 107 S.Ct. 3034, 3039 (1987)). Thus, "[i]f reasonable public officials could differ on the lawfulness of a defendant's actions, the defendant is entitled to qualified immunity." Storck v. City of Coral Springs, 354 F.3d 1307, 1314 (11th Cir. 2003). To demonstrate that the law is clearly established, a party is not required to cite cases with materially similar facts; rather, the state of the law at the time of the unconstitutional act must be established sufficiently to give "fair warning" to the official that his conduct is unlawful. Hope, 536 U.S. at 741, 122 S.Ct. at 2516.

In the instant case, Defendant contends Plaintiff cannot show binding precedent establishing that Defendant had a duty to ensure that Muslim inmates did not accidentally ingest pork (Doc. 33 at 7). However, in light of this Court's conclusion that, viewing the facts in the light most favorable to Plaintiff, a reasonable jury could infer Defendant purposefully gave Plaintiff a food tray that he knew was contaminated with food prohibited by Plaintiff's religion, the legal precedent regarding a defendant's accidental conduct is irrelevant.

Defendant further contends the law was not clearly established that a single instance of being fed pork is not a violation of a Muslim inmate's First Amendment rights (*id*. at 11-12). As discussed *supra*, Supreme Court precedent dating well before 2001 clearly stated that conditioning a religious adherent's receipt of an important benefit upon conduct proscribed by the adherent's faith imposes an impermissible burden on the free exercise of religion. The Eleventh Circuit clearly stated in 1995 that prohibiting a religious adherent from engaging in conduct that his religion requires constitutes a substantial burden on free exercise of religion. Cheffer, 55 F.3d at 1522. Thus, a reasonable officer would have known that compelling a Muslim inmate to consume pork violated the First Amendment, even if the compulsion was indirect, such as knowingly misrepresenting that the food tray was an alternate. This Court thus concludes that, at the time of the incident in June of 2001, the clearly defined preexisting law would have indicated to Defendant that his conduct was unconstitutional.

IV.     CONCLUSION

Based on the foregoing, the undersigned concludes that Defendant's motion for summary judgment should be granted to Defendant in his official capacity. Furthermore, summary judgment should be granted to Defendant in his individual capacity on the issues of compensatory and punitive damages. The motion for summary judgment should be denied to Defendant in his individual capacity on the issue of nominal damages for the alleged First Amendment violation. Additionally, Defendant is not entitled to the defense of qualified immunity on the First Amendment claim at this stage. Of course the court does not on this record resolve the disputed factual issues. It will be Plaintiff's burden to prove his version of the facts to a jury.

Accordingly it is respectfully **RECOMMENDED**:

1.      That Defendant's motion for summary judgment (Doc. 33) be **GRANTED IN PART**. Summary judgment should be **GRANTED** to Defendant in his official capacity. Additionally, summary judgment should be **GRANTED** to Defendant in his individual capacity on the issues of compensatory and punitive damages. Summary judgment should be **DENIED** to Defendant in his individual capacity on the issue of nominal damages.

2.      That the clerk be directed to enter judgment accordingly and return the file to the undersigned for further proceedings.

Case No.:   5:03cv192/MCR/EMT

At Pensacola, Florida this 12th day of September 2005.

>   /s/ *Elizabeth M. Timothy*
>   **ELIZABETH M. TIMOTHY**
>   **UNITED STATES MAGISTRATE JUDGE**

### NOTICE TO THE PARTIES

**Any objections to these proposed findings and recommendations must be filed within ten (10) days after being served a copy thereof.  A copy of objections shall be served upon all other parties.  Failure to object may limit the scope of appellate review of factual findings.** *See* **28 U.S.C. § 636; United States v. Roberts, 858 F.2d 698, 701 (11th Cir. 1988).**